## IN THE COURT OF COMMON PLEAS
## CUYAHOGA COUNTY, OHIO

| | |
|---|---|
| Anna Lasko<br>167 Lancaster<br>Pittsburgh, PA 15228<br><br>*Plaintiff,*<br>    vs.<br><br>Mobile Hyperbaric Centers, LLC<br>c/o CT Corporation System<br>4400 Easton Commons Way, Suite 125<br>Columbus, OH 43219<br><br>and,<br><br>Michael N. Huber, M.D.<br>3622 Deer Creek Trail<br>Richfield, OH 44286<br><br>and,<br><br>ABC Companies 1 – 5<br><br>and,<br><br>John Does 1 - 5 | ) CASE NO.:<br>)<br>) JUDGE:<br>)<br>)<br>)<br>)<br>) **COMPLAINT**<br>) **DISABILITY DISCRIMINATION**<br>)<br>)<br>)<br>)<br>)<br>)<br>) **JURY TRIAL DEMANDED**<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

Plaintiff, Anna Lasko ("Lasko" or "Plaintiff"), by and through counsel, for her Complaint against Defendants, Mobile Hyperbaric Centers, LLC ("Mobile"), Michael N. Huber, M.D. ("Huber"), ABC Companies 1 – 5 ("Companies") and John Does 1 – 5 ("Does"), (collectively, "Defendants"), states that:

### PARTIES

1. Lasko is a resident of Pittsburgh, Pennsylvania.



2. Mobile Hyperbaric Centers, LLC is an Ohio Limited Liability Company doing business in Cleveland, Ohio.

3. Michael N. Huber, M.D., is a licensed physician in the State of Ohio who resides in Richfield, Ohio. At all times relevant to this Complaint, he managed the Parma location of Mobile Hyperbaric Centers, LLC.

4. ABC Companies are affiliates, owners, and subsidiaries of Mobile.

5. John Does are employees of Mobile Hyperbaric Centers, LLC.

## JURISDICTION AND VENUE

6. This Court has jurisdiction over the subject matter of this action pursuant to R.C. 4112.99.

7. This action is properly venued in this Court under Rule 3 of the Ohio Rules of Civil Procedure because the actions giving rise to this Complaint took place in Cuyahoga County.

## EVENTS GIVING RISE TO THIS ACTION

8. At all times relevant to this Complaint, Lasko has suffered from Complex Regional Pain Syndrome ("CRPS").

9. CRPS is a qualifying disability under Ohio and Federal law.

10. At all times relevant to this Complaint, Lasko has suffered from a hypersensitivity to sound.

11. Hypersensitivity to sound is a qualifying disability under Ohio and Federal law.

12. In February of 2017, Lasko participated in several sessions of Hyperbaric Medicine Oxygen Therapy ("HBOT") to alleviate her CRPS at Mobile.

13. On numerous occasions, Lasko informed the technicians, the staff, and doctor Huber, that she suffered from hypersensitivity to sound.

14. The group hyperbaric chamber at all relevant times has or had a television in it so that staff and patients could watch it during the several hour "dives" in the hyperbaric chamber.

15. The television was to alleviate boredom and did not serve any medical function.

16. On the occasions that Lasko was in the chamber, she informed the technician that she needed the sound on the television turned down, the channel changed to something that would be easier on her hearing, or the television turned off.

17. The technicians refused to accommodate Lasko.

18. Lasko met with Dr. Huber to discuss potential accommodations for Lasko's hearing hypersensitivity.

19. Dr. Huber refused to accommodate Lasko, and accused her of causing "problems" at the facility.

20. Dr. Huber followed up with a letter to Lasko, in which he mischaracterized her requests for accommodation and informed her that he was cancelling her remaining treatments effective Monday, February 13, 2017. Exhibit 1.

21. On or about February 17, 2017, Lasko and her husband, William Lasko, wrote to the CEO and Co-President of Mobile, Dr. Ronald Gordon and Dr. Charles Cowap, to complain about the conduct of Dr. Huber and the staff of Mobile. Exhibit 2.

22. Mobile never accommodated Lasko's requests.

23. On or about April 17, 2017, Lasko wrote to Dr. Huber to again complain about the treatment she received at Mobile, and to inform him that she was able to receive treatment at other hyperbaric companies with reduced television volume without issue.

24. No response was ever received from Dr. Huber.

25. Lasko incurred significant lost time, travel, and cost in finding alternate hyperbaric companies to complete her hyperbaric therapies.

26. Lasko has suffered humiliation and emotional distress as a result of Defendants refusal to accommodate her reasonable request of turning down volume on a television during her HBOT.

## COUNT I
### DISABILITY DISCRIMINATION, R.C. 4112.02(G)

27. Lasko restates and reincorporates all paragraphs of this Complaint by reference as if fully rewritten and reincorporated herein.

28. Mobile is a place of public accommodation pursuant to R.C. 4112.01(A)(9). Ohio Adm. Code 4112-5-02.

29. Defendants refused to permit the full enjoyment of Mobile' hyperbaric chamber to Lasko in violation of R.C. 4112.02(G).

30. Lasko may bring an action against Defendants for violations of R.C. 4112.02(G) pursuant to R.C. 4112.99 for damages and injunctive relief.

31. As a direct and proximate result of Defendants' disability discrimination, Lasko has been damaged in an amount to be determined at or prior to trial.

## COUNT II
### DISABILITY DISCRIMINATION, AMERICANS WITH DISABILITIES ACT

32. Lasko restates and reincorporates all paragraphs of this Complaint by reference as if fully rewritten and reincorporated herein.

33. Mobile is a place of public accommodation pursuant to the Americans with Disabilities Act. 42 U.S.C. § 12181(7)(F).

34. Defendants failed to reasonably accommodate Lasko's disability in violation of 42 U.S.C. 12182(b)(1)(A)(i).

35. As a direct and proximate result of Defendants' disability discrimination, Lasko has been damaged in an amount to be determined at or prior to trial and in no event less than the amount it will cost her to have the contracted work performed properly, including but not limited to the costs of repairing damages to the Premises caused by Defendants' substandard work and the amount paid to Defendants that has not been returned.

**PRAYER FOR RELIEF**

WHEREFORE, Lasko respectfully asks this Court to: (1) enter judgment in her favor on Counts I–II of her Complaint; (2) grant injunctive relief to Lasko prohibiting Defendants from participating in the proscribed conduct and amending their policies and procedures to accommodate patients with audial hypersensitivity and (3) enter an Order compelling Defendants to pay to Lasko:

    a. compensatory damages

    b. incidental and consequential damages

    c. expectancy damages

    d. punitive damages;

    e. reasonable attorneys' fees and costs incurred by Lasko in prosecuting this action; and

    f. any and all such other and further relief that this Court deems just and proper.

Respectfully submitted,

*/s/ Nicholas P. Weiss*
Mark M. Turner (0075516)
Nicholas P. Weiss (0090799)
Cindy Menta (0097722)
THE GERTSBURG LAW FIRM CO., LPA
100 North Main Street, Suite 300
Chagrin Falls, Ohio 44022
Phone: (440) 571-7777
Fax: (440) 571-7779
mt@gertsburglaw.com
nweiss@gertsburglaw.com
cm@gertsburglaw.com
*Counsel for Plaintiff, Anna Lasko*

## JURY DEMAND

Plaintiff hereby demands a jury trial for all issues herein so triable by the maximum number of jurors allowed by law.

*/s/ Nicholas P. Weiss*
Nicholas Weiss (0090799)
*Counsel for Plaintiff, Anna Lasko*

EXHIBIT 1



VIA FEDERAL EXPRESS *Healing with Oxygen*

~~January~~ Feb. 10, 2017

Anna Lasko
167 Lancaster Avenue
Pittsburgh, PA 15228

Dear Anna:

As you may recall, after your Hyperbaric Medicine Oxygen Therapy ("HBOT") treatment on 02/07/17, you had informed me, that the volume on the TV was too loud for your preference, and, that you did not want to continue your HBOT with other patients in the dive, and requested that you be scheduled to dive alone, and without any other patients in the dive.

We had a lengthy discussion regarding your requests, at which time I informed you that we could not accommodate your requests, as we need to be able to provide HBOT to all patients scheduled in our multichamber. I also advised, that I would be happy to assist you in locating another multichamber facility that you could contact, as another facility may be able to accommodate your requests.

Please be advised, that we cannot accommodate your requests, as noted above, and for that reason, we are cancelling your treatments here, effective Monday, 02/13/17.

I will contact your referring physician, Dr. Karl E. Bushman, to keep him informed.

Sincerely,

*Michael N. Huber*, M.D.

Michael N. Huber, M.D.
Center Director
Hyperbaric Medicine Department
UH Parma Medical Center

Mobile Hyperbaric Centers, LLC

EXHIBIT 2

17 February 2017

William Lasko
Senior Director – Enterprise Transformation
Life Sciences Industry
HCL Technology Solutions, Inc.
William.lasko@hcl.com

+1 (412) 403-5710

To CEOs and Co-President:
Dr. Ronald Gordon and Dr. Charles Cowap

Dear Dr. Gordon and Dr. Cowap.

I would like to inform you of a series of incidents that recently occurred at your centers resulting in my wife being denied necessary approved healthcare treatment, and experiencing discrimination by national origin from your attending physicians Dr.'s Doyle & Huber.

Several years ago, my wife Anna was a healthy 35-year-old dance studio owner. She suffered an unfortunate injury that developed into a debilitating chronic pain disease called Complex Regional Pain Syndrome (CRPS). Her condition was so difficult that she was bound to a wheelchair with agonizing pain in both feet. However, Anna was determined to get well no matter what. She tried many therapies and medications and found that HBO therapy was the most effective treatment for her condition. For the past two years, she has undergone 170 hyperbaric sessions, the last 70 of which were provided at the Mobile Hyperbaric Centers. Currently, she is 90% pain free and mobile.

Last year Anna took 60 sessions at your Marymount Hospital location. Under the supervision of Dr. Katz - her treatment was delivered very professionally and there were no incidents of discrimination or unfair treatment throughout the entire 12 month period. She was in a comparatively worse physical condition then, but she had no such altercations with any staff members and all her medical needs were met successfully. Her hypersensitivity to loud sounds (by the TV) were considered by staff, and a balance was found between her and the desires of the other patients. Throughout the entire course of treatment there were no complaints by either Anna or by staff at the facility.

However, just one year later the culture at the center has changed with Dr. L. Doyle as the medical director of the center. On her 6th session at Marymount, Anna was with another patient, a woman in her 80s who suffers partial hearing loss. The TV volume was louder than usual and this interfered with Anna's treatment – thus Anna requested to Dr. Doyle (in my presence) that she reduce the volume of the TV which the other patient was not averse to. Dr. Doyle reacted in a highly unprofessional manner – stating that she was not going to adjust the volume or otherwise accommodate any additional requests from Anna. In my presence, Dr. Doyle admonished and publicly embarrassed my wife in a manner I rarely see from medical professionals.

Upon her next visit (I was not in attendance) – Dr. Doyle again admonished and embarrassed Anna – but this time ( again in public view ) she violated her HIPPA rights by advising Anna to have her hearing issues checked by a medical doctor. Anna was completely humiliated by Dr. Doyle's violation of her confidence and she will no longer place herself in the care of Dr. Doyle under any circumstances. We will address this HIPPA issue separately with the appropriate authorities.

These events motivated Anna to seek treatment at another location, in the hopes that she would experience more professional and tolerant treatment elsewhere. Unfortunately, the situation at the Parma location was even worse for Anna.

On 2/7/2017 in her first session in the Parma hyperbaric chamber where Anna was the only patient in the dive, she opted to have no volume at all, but the technician in the chamber coldly refused to fulfill her request. The technician flatly refused to reduce the volume and informed her that he wanted to be entertained during the session – stating - "If you don't like it - then don't come here!"

Anna found this behavior highly obnoxious and rude. She complained to Dr. Huber (the conversation was videotaped on her phone). Dr. Huber was completely unsympathetic to her condition and even denied that her sensitivity was valid. He stated to her that she was embellishing the sound-situation and did not believe that her difficulties are real. The videotape clearly shows Dr. Huber being discriminatory towards Anna and completely ignoring her needs. This lack of trust on part of your medical staff created a very unpleasant and even risky situation for Anna.

Anna told Dr. Huber that she suffers from hypersensitivity to unexpected, sudden, high pitch noises. Those noises cause her anxiety and worsen the CRPS pain. Anna offered to come early in the day at the 8AM session as the patient volume is very low then, but Dr. Huber refused stating that because of Anna's repeated "complaints" he must refuse to allow her in the chamber alone "with the technician". I found this statement to be very

disturbing, as Dr. Huber apparently didn't trust Anna or had some type of preconceived prejudice involving her.

The following day Anna took a hyperbaric session with 3 other patients, the technician - Brian set up the volume to a tolerable degree and picked the Travel Channel – which has no sudden or loud sounds. She had no issues with the sound and everyone in the dive was happy. After that session she told Dr. Huber that everything was great and that she would like to continue treatments – with another 20 sessions remaining in her current campaign. This was her last conversation with him until on Monday 2/13/17 when he called her and said that he denies her access to hyperbaric treatment.

His allegation for this was that on her third dive, on 2/9/17 - she complained to the technician that the volume was high.

What happened on her last session was absolutely unprofessional and discriminatory, but she didn't complain to anyone about it. Nicola - the technician, asked the other patient if she was comfortable with the volume and never asked Anna, ignoring her hypersensitivity issue. When Anna asked if she could pick another channel - she was refused. Nicola said that this is what she wants to watch. When Anna asked "what about me?" - she shrugged her shoulders and went back to the entertainment, and made the volume even louder. They were laughing through the show, having a great time and were discussing future episodes. No one asked Anya if she minded, and if the volume might be too loud for her. She was visibly disturbed, but the technical staff didn't provide her any support.

This past week Dr. Huber sent Anna a letter where he states that he cannot fulfill her needs. In his letter he tells an untruth stating that she made a request to be treated individually in a multiple chamber. This never happened, and it seems the doctor has written this letter in an attempt to preempt any suspicions that may arise of his discrimination. Anna also recorded her last phone conversation with him where he said that he denies her treatments because she asked the technician to either change the channel for 50% of the time of the session, or lower down the volume to a normal degree. Please note again that Anna took more than 160 HBO sessions in multiple chambers in the past. She is very familiar with the setting and it would be ridiculous for her to request to be treated by herself. Dr. Huber could easily accommodate her unique but reasonable and medically necessary requests, he simply chose not to. His technical staff was not only unhelpful to Anna, but they deliberately created a dangerous and discriminatory environment.

These prescribed treatments are very crucial for addressing her neurological diagnosis. They must not be interrupted in order to be effective. Now she is forced to stop her treatments and seek another multiple HBO facility which will likely again be out of state. It was hard for Anna to find the chamber large enough due to her claustrophobia, within a reasonable driving distance from our home, and with the right atmospheric pressure and within network coverage with our insurance.

I believe Dr. Huber discriminated against my wife Anna on the basis of her national origin. I do not see any other reason why he would refuse to treat her, and his vain attempts to explain himself only further preclude any reasonable explanation. Anna compromised on many aspects in order to receive the therapy she so dearly needs – driving 5 hours and nearly 300 miles each and every day. She was ready to come to those sessions in Pharma at 8AM when 0-1 patients were scheduled, and asked to have a change to pick a quieter TV channel for at least 50% of the time when with another patient. She should at least have received some proportion of the vote to choose which channel to watch – instead she was stifled and shut down completely as if her vote doesn't count.

I am kindly asking you to address this misconduct for the sake of other patients under Dr. Huber's and Dr. Doyle's supervision. My wife will complete treatment in a facility where television activity is optional and certainly not a requisite activity.

I'll be happy to clarify any additional information you may require with respect to this matter.



Sincerely Yours –


William P. Lasko


Attachments – letter from Dr. Michael Huber dated 10 January 2017 ( mistaken date ) denying medical treatment for Anna Lasko, and letter from Anna to Dr. Huber.

April 2, 2017                                               EXHIBIT 3

Michael N. Huber M.D.
Center Director
Hyperbaric Medicine Department
UH Parma Medical Center


Dr. Huber – this is a letter that I find both unfortunate and difficult to write, but nonetheless I am convinced that written history should be provided of the manner in which I was treated under your care at the Mobile Hyperbaric Centers, Parma location in February 2017.

It is my opinion that in my case you violated your Hippocratic Oath when you refused to provide treatment for me – then lied to my PCP trying to justify your actions. I generally do not expect such unprofessional behavior from a member of the medical profession at your level – hence the motivation for this letter.


This debacle began with a simple request to turn down the volume on a television set – inside the Hyperbaric Chamber. A request such as this should be a simple matter – and indeed has been at the facilities I have attended subsequent to yours. But with you and your staff – the volume setting on the television seems to be a matter of the highest importance. It's clear that instead of considering my medical needs, you and your staff took my request as a personal affront and decided that you would resist this and every additional request I would suggest in the future. It seems you reacted with prejudice to me after I tried in vain to be as adamant as possible without being unruly.

As you may learn if you were so interested - I do indeed have medically discernible hypersensitivity to noise – diagnosed by a doctor – and it's not a matter of taste or convenience on my part. And surely it should never have escalated to become a reason for my being refused treatment. This simple request could have be easily been accommodated, and indeed was so in the two additional rounds of HBO treatment I have received since your refusal – in Florida and Washington state.

When I expressed my noise hypersensitivity condition to the medical staff at these two facilities they made immediate volume setting adjustments and there were no issues at all over the weeks afterwards during my treatment – which by the way has been greatly successful – no thanks to you. I took a moment and explained to the medical Director at the facility in Spokane about my experiences and your approach to medicine and she encouraged me to report you to the Ohio State Board of Medical Ethics – which I intend to do.


I'm not going to repeat the ridiculous details of how I was treated by you and your unprofessional staff in Ohio (the staff follow leadership) – but it's clear that after 3 full weeks of HBO treatment which I had to travel across country for – your approach to medicine is harmful to the community and your state medical board, and indeed your potential pool of patients should have access to this information so they can either avoid you or impose corrective action.

At the facility under your supervision, patients are exposed to care professionals who are more concerned with the volume setting on a television than whether a patient is receiving important treatment. The technicians you chose to employ are the most unprofessional I have ever come across in any professional setting. Your siding with their opinions says much of your judgment and professional credibility.

Your falsehood in trying to cover up the incident to other MDs exposes you further as one who would likely cover up other, perhaps more life-threatening incompetence. I will be thorough and truthful as I write each various professional association and each consumer / patient advocacy body and will follow the guidance of my current medical team – who were appalled at the manner in which you and your group operate.

In my opinion, as an informed medical consumer – you are both a poor physician and at best a highly immature adult – I am certain that this combination will result in your harming a patient eventually, in addition to myself.

And lastly, I assume on my last session you gave your technician the instruction to increase the TV volume, so it would be unbearable for me to take the dive. I have to admit it was painful. And my polite expression to lower the volume or at least to change the channel was rejected again. However, I didn't complain to you that day. The last in-person conversation I had with you after my second session - was my satisfaction with the chamber condition and my determination to complete the course. I needed the treatment medically – it was very important medically for me to continue.

You, however, decided to totally deny me access to HBO. You placed me into harms' way by doing so – and the only reason I can overcome this abuse is because I have the economic means to do so. I'm certain that most patients cannot decide to just go elsewhere and are stuck in that horrendous environment you staff.

My current HBO course has been completed in beautiful Florida were doctors and staff were compassionate about their profession and very helpful. I cannot comprehend how a place like HBO in Parma is even in business. Your entire environment is hateful and unprofessional and dangerous. Perhaps the culture in your facility reflects the quality of people who operate it.

I will sure spread the word about it.


Anna Lasko
167 Lancaster Ave.
Pittsburgh, PA 15228


Copy:    U.S. Department of Health and Human Services
Patient's Advocate University Hospital Parma Medical Center
CEO and President of Mobile Hyperbaric Center Dr. Cowap and Dr. Gordon
The State Medical Board of Ohio
Dr. Karl Bushman, MD